Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Rebecca R. Pallmeyer | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 7732 | **DATE** | 2/3/2003 |
| **CASE TITLE** | Aaron M. vs. Joseph Yomtoob, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
     ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion And Order. Defendant's motion for decision (Doc. No. 48-1) is granted. Plaintiffs' motion for summary judgment (Doc. No. 37-1) is denied. Defendants' motion to strike (Doc. No. 39-1) is denied, and Defendants' motion for summary judgment (Doc. No. 33-1) is granted. Judgment is entered in favor of Defendants.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 2 number of notices | |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | FEB - 4 2003 date docketed | 53 |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 2/3/2003 date mailed notice | |
| ETV | courtroom deputy's initials | Date/time received in central Clerk's Office | ETV mailing deputy initials | |

AARON M., by and through his parents and next )
friends GLEN M. and LINDY M., and on their )
own behalf, )
)
Plaintiffs, )
)
v. ) No. 00 C 7732
)
JOSEPH YOMTOOB, JESS PORRES, both ) Judge
sued in their official capacity and individually; and ) Rebecca R. Pallmeyer
HAWTHORN SCHOOL DISTRICT NO. 73, )
)
Defendants. )

## MEMORANDUM OPINION AND ORDER

Plaintiff, Aaron M ("Aaron M." or "Aaron") is a minor disabled child (born on October 19, 1988) who has been diagnosed with autism. (Defendants' Local Rule 56.1 Statement of Material Uncontested Facts at ¶ 3, hereinafter "Defs.' 56.1," Record at 6.) Since January 1996, Aaron has been enrolled in a private residential facility, Boston Higashi, located in Randolph, Massachusetts. (Id. ¶ 10.) Plaintiffs Glen M. and Lindy M. ("Parents") are Aaron's father and mother, respectively, and are residents of Defendant Hawthorn School District No. 73 ("District") in Lake County, Illinois. (Id. ¶ 4.) Defendant Joseph Yomtoob is the Superintendent of Hawthorn School District No. 73. (Id. ¶ 5.) Defendant Jess Porres was the interim Superintendent of the school district for one year during 1995 and is currently the Associate Superintendent, Chief Financial Officer of the district. (Id. ¶ 6.)

On November 27, 1999, Aaron's parents filed a request for a special education due process hearing to challenge the appropriateness of Aaron's Individualized Education Program ("IEP"), developed for Aaron by the Defendants at a meeting on November 19, 1999. The parents challenged both the procedures taken to develop Aaron's 1999 IEP and the decision by the District to reduce the number of reimbursable parent training trips to Boston Higashi from the previously

53

authorized twelve to six. (Complaint ¶ 14.) On December 8, 2000, Plaintiffs brought this action against the Defendants. Plaintiffs appeal the result of the due process hearing, alleging that the Independent Hearing Officer ("IHO") made erroneous findings of fact and law. In addition, Plaintiffs allege that Defendants have violated the "stay-put" provisions of the IDEA, 20 U.S.C. § 1415(j). Pending before this court are both parties' motions for summary judgment, and Defendants' motion to strike Plaintiffs' Local Rule 56.1 statement. For the following reasons, the court grants summary judgment to the Defendants.

## FACTUAL BACKGROUND

The following facts are taken from the parties' Local Rule 56.1 statements.[1] Aaron's December 1995 IEP provided for residential placement and in January 1996, he was placed in Boston Higashi, where he has been enrolled ever since. (Defs.' 56.1 ¶ 10.) The Boston Higashi program was selected because Aaron required 24-hour "milieu therapy" utilizing the "Daily Life Therapy Program," which is unique to Boston Higashi.[2] (Id. ¶ 12.) Although Aaron was functioning well in a special education setting within the public school system, Aaron was initially placed in the residential program because he was not generalizing his skills at home and outside of the school setting, which reduced the efficacy of the instruction he was provided at school. (Id. ¶ 11.) The placement in Massachusetts was anticipated to be temporary, and was intended to help Aaron learn to control his behavior and also to teach Aaron's parents the skills and strategies to work with

---

[1] Defendants moved to strike most of Plaintiffs' Local Rule 56.1 statement for failure to cite to the administrative record. While this court agrees that Plaintiffs often failed to make specific references to the record, consideration of Plaintiffs' statement does not affect the court's judgment, and therefore the court denies Defendants' motion to strike.

[2] According to www.bostonhigashi.org, the trademarked Daily Life Therapy program is an educational approach designed to foster interdependence and consequently independence for children who tend to be socially isolated. Its primary focus is to establish stability of emotions gained through the pursuit of independent living and the development of self-esteem. The second focus is extensive physical exercise to establish a rhythm of life, and the third focus is on stimulation of the intellect.

Aaron so he could return to his home. (*Id.* ¶¶ 12-14.)

In developing Aaron's 1995 IEP, the District represented to the Illinois State Board of Education that "Higashi's emphasis on parent training is vitally important if Aaron is ever to return to his home and family." (Plaintiffs' Local Rule 56.1 Statement ¶ 13, hereinafter "Pls.' 56.1".) Therefore, the District agreed in the IEP to reimburse Aaron's parents for up to twelve visits to Boston per year, either for training or to pick Aaron up or drop him off. (*Id.* ¶ 10.) From 1996 until November 1999, the District agreed to reimburse Aaron's parents for twelve trips to Boston Higashi per year. (Defs.' 56.1 ¶ 76.)³ Counting trips solely for training, as well as trips that combined training with taking Aaron to or from Boston Higashi, from 1996 through 1999, Aaron's parents never took more than six roundtrips to Boston. (Pls.' 56.1 ¶ 101.) Aaron's parents have never gone to visit him when their trip was not paid for by the District. (Defs.' 56.1 ¶ 79.)

Aaron's 1998 IEP was due to expire on November 3, 1999. (Defendants' Response to Pls.' 56.1 ¶ 71, hereinafter "Defs.' Resp.") In a letter dated October 13, 1999, counsel for the District advised counsel for the parents that Boston Higashi officials had advised the Special Education District of Lake County ("SEDOL") representative that Boston Higashi would not be able to take part in an IEP meeting until mid to late November 1999. (*Id.* ¶ 71.) In the same letter, counsel inquired as to whether or not Aaron's parents would be willing to waive the obligation for the District to conduct the IEP meeting by November 3, 1999 until mid to late November, to accommodate school officials. (*Id.*) The record does not include information concerning any response to this request, but on October 27, 1999, the District sent a notice that the IEP meeting had been set for November 19, 1999 to the following invited participants: Lisa Caccamise, SEDOL Case Manager;

---

³ Plaintiffs argue that these twelve reimbursable trips were in addition to six reimbursable trips for purposes of taking Aaron to Boston Higashi or picking him up, for a total of eighteen trips to be paid for by the District per year. (Plaintiffs' Memorandum in Support of Summary Judgment at 17, 18.) Plaintiffs have offered no support for this interpretation, however, and the IHO found that no more than twelve visits had previously been authorized by the earlier IEPs for reimbursement.

3

Hank Sohn, School Psychologist; SueAnn Smith, District 73 Special Education Coordinator; Laura Sinars, District 73 attorney; Mike Latham, SEDOL Supervisor; Gail Kirkham, SEDOL School Psychologist; Aaron's parents, participating by conference call; and Boston Higashi staff, participating by conference call. (*Id.* at ¶ 79.)

The District's IEP meeting took place as scheduled on November 19, 1999. Present at the meeting in the District office were: Sue Ann Smith, representing the District; Lisa Caccamise, the SEDOL psychologist who replaced Hank Sohn as case manager after Sohn's retirement; Sohn himself, at the District's request, to assist Caccamise; and Mike Latham. Dr. Kirkham did not attend, but her summer 1999 report on Aaron's progress was sent to Aaron's parents. Aaron's parents and Boston Higashi staff participated by phone and facsimile from Boston, and Aaron's parents' attorney participated by phone from another location. (Record at 16.) The IHO found that all of the individuals involved, with the exception of Caccamise, had been familiar with Aaron's case since before his placement at Boston Higashi. (*Id.*) The participants discussed Aaron's current level of ability, and then developed goals for Aaron and a description of the services necessary to meet those goals. (Defs.' 56.1 ¶ 110.) As each goal was developed by the meeting participants in the District office, it was sent via facsimile to the Boston Higashi staff, Aaron's parents, and Aaron's parents' attorneys. (*Id.* ¶ 111.)

The IEP team agreed that Aaron would remain at Boston Higashi for the next school year. (*Id.* ¶ 126.) The IEP addressed the related services of transportation and parent training as follows:

> Transportation for Aaron includes three round trips to correspond with his breaks from school; transportation for Parents includes six round trips of airfare for Parents only which correspond with Aaron's breaks (December 16/17, January 2/3, April 15/16, April 30/May 1, August 10/11, and September 10/11); in addition to airfare, the related service of transportation for the Parents includes two nights of hotel, one room, two days' meal reimbursement at $35 per day per person for Parents only, two days parking at O'Hare, and two days' rental car per trip; the related services of parent training includes parent training provided by Boston Higashi staff immediately preceding and following Aaron's breaks and is expected to be coordinated with the visits described above.

4

(Defs.' Resp. to Pls.' 56.1 ¶ 85.) The District made no demand that Boston Higashi change its program in any respect. (Record at 16.) Additionally, the District offered to arrange all transportation. Aaron's parents objected to the District's limitation on the number of reimbursable visits, and did not agree to the IEP.

## Aaron's Due Process Hearing

A special education due process hearing was held on April 3 and 5 and June 9 and 30, 2000. (Defs.' 56.1 ¶ 134.) The issues before the IHO were: "1) Whether the Student's November 1999 IEP complies with the Individuals with Disabilities Education Act (IDEA);" and "2) Whether the District should be permitted to reduce the number of reimbursable Parent trips to Boston Higashi . . . from twelve per year to six." (*Id.* ¶ 136.) The IHO noted specifically that neither the adequacy of Aaron's educational program prior to the November 19, 1999 IEP, nor the issue of whether or not the District violated IDEA's "stay put" provision, were at issue in the hearing. (*Id.* ¶¶ 137, 139.) She noted, further, that the parents have not claimed that Aaron had been denied a free, appropriate public education ("FAPE"), and stated that "[t]o meet the legal standard for [a] procedural deficiency to be considered a denial of FAPE, a procedural violation in the IEP development must result in a deprivation of a FAPE - that the child has not received an adequate education." (*Id.* ¶¶ 140-41.)

The IHO issued a decision on August 15, 2000, in which she determined that the number of reimbursable visits provided for in Aaron's November 19, 1999 IEP was appropriate. (Defs.' 56.1 ¶¶ 129-130.) The IHO found that Boston Higashi willingly schedules meetings to suit parents' schedules who live outside of the Boston area. (Defs.' 56.1 ¶ 99.) The IHO noted that the following considerations in support of her decision: 1) the parents have never taken twelve training trips to Boston in one year since Aaron first enrolled in Boston Higashi; 2) the parents' trips to and from Boston have been to pick Aaron up and drop him off and for attendance at family events, and

5

have not coincided with Parent Study Meetings, the training sessions offered by Boston Higashi; 3) the parents' level of training has provided for successful home visits with Aaron; 4) Boston Higashi is flexible in its schedule, provides training when parents pick up and drop off students, and does not require more trips for out-of-state residents; and 5) Boston Higashi did not include parent training as a goal in the IEP it proposed for Aaron in November 1999. (*Id.* ¶ 148.)

The IHO also noted that Aaron has steadily improved in all areas since his placement at Boston Higashi in January 1996. (*Id.* ¶ 147.) She noted that Aaron's parents have developed skills to generalize Aaron's improved behavior from his placement at Boston Higashi to home, and found that Aaron's home visits were successful. (*Id.* ¶¶ 17, 18.) At the hearing, Glen M., Aaron's father, testified that prior to Aaron's attending Boston Higashi, Aaron was a "little boy who just basically did what he wanted to do with no direction and with any redirection would scream, would not want to do anything but maybe climb up on a bookshelf, knock everything off on a bookshelf and sit there. If you tried to take him down, he'd scream again." (*Id.* ¶ 19.) His mother, Lindy M., described Aaron as "a little animal" who was uncontrollable behaviorally, prior to attending school in Boston. (*Id.* ¶ 20.) She testified at the hearing that Aaron had become easier to handle:

> Aaron listens to us now. We can take him places. We take him to museums now when he is home. We've gone to the aquarium. We've gone to the Museum of Science and Industry. We take him downtown. We walk Aaron downtown. If there is ever a time when he is losing control, we know how to deal with him. We know what to say; what to do.

(*Id.* ¶ 21.) Aaron's parents admitted to the IHO that they have achieved the necessary skills for successful at-home visits with Aaron, a finding the IHO felt was supported by the observations of two professionals who have monitored Aaron's progress. (*Id.* ¶¶ 74, 80.)

Additionally, the IHO found that the "evidence amply demonstrates that the District worked with the [Boston Higashi] staff and parents to develop the IEP. This satisfies the requirement of the IEP as long as the decision is made by a group of persons knowledgeable about the Student." (*Id.* ¶ 131.) The IHO found that the District used the goals developed by Boston Higashi for Aaron

in developing the November 1999 IEP, and included the legal requirement of making the goals measurable. (*Id.* ¶ 120.) Contrary to Aaron's parents' unsupported assertions, the IHO determined there was no reason that Boston Higashi could not successfully implement Aaron's IEP. (*Id.* ¶ 123.)

On December 8, 2000, the Plaintiffs brought this action.[4] In Count II, Plaintiffs appeal the result of the due process hearing, specifically the IHO's conclusion that the reduction of reimbursable trips was reasonable, and that the process followed in formulating Aaron's 1999 IEP was acceptable under the relevant portions of the Individuals with Disabilities Education Act ("IDEA"). 20 U.S.C. § 1414. Plaintiffs also allege that the Defendants' conduct violated the "stay-put" provisions of the IDEA, 20 U.S.C. § 1415(j).

## DISCUSSION

The IDEA brings cases to district courts in a unique posture. The district court "shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and, basing [the court's] decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(e)(2). The court must give "due weight" to the hearing officer's findings, a standard that is more stringent than merely ensuring that the IHO's decision is supported by substantial evidence, but it is not completely *de novo*, either. *Heather S. v. Wisconsin,* 125 F.3d 1045, 1052 (7th Cir. 1997). The court must not substitute its own notions of sound educational policy for those of the school authorities. *Board of Educ. of Community Consol. Sch. Dist. 21 v. ISBE (Dist. 21),* 938 F.2d 712, 715-16 (7th Cir. 1991). Recognizing that IHOs have much more expertise in educational policy, the court is to independently evaluate the evidence, but defer to the IHO's determinations. *Heather S.,* 125 F.3d

---

[4] Count I of the Plaintiffs' complaint, alleging breach of a settlement agreement, was dismissed by joint agreement of the parties following this court's ruling on Defendants' motion to dismiss. *Aaron M. v. Yomtoob,* 2001 WL 1465251, at *1, 2 (N.D. Ill. Nov. 16, 2001).

at 1053. The court also reviews purely legal questions *de novo*. *Morton Community Unit School Dist. No. 709 v. J.M.*, 152 F.3d 583, 588 (7th Cir. 1998).

**Plaintiffs' Stay-Put Challenge**

Recognizing that it can take years to resolve a placement dispute under the IDEA's administrative and judicial review procedures, section 1415(j) of the IDEA requires that

> [e]xcept as provided in subsection (k)(7) of this section, during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of such child, or, if applying for initial admission to a public school, shall, with the consent of the parents, be placed in the public school program until all such proceedings have been completed.

20 U.S.C. § 1415(j). This has become known in the education sector as the "pendent-placement" or "stay-put" provision of the Act. Plaintiffs argue a violation of the stay-put provision of the IDEA, but have offered no evidence of any such violation. Defendants state in their Motion for Decision filed on January 17, 2003, that "pursuant to the 'stay put' provision within the Individuals with Disabilities Education Act, because the Plaintiffs are contesting the November 19, 1999 IEP, the School District is required to implement the prior IEP, which calls for twelve trips per year for the Parents to travel between Chicago and Boston at School District expense." (¶ 13.) Defendants' Statement Concerning Age and Mootness states that "[d]uring the court of these proceedings, Glen and Lindy M., Aaron's parents, have continued to obtain reimbursement for round trip travel between Chicago and Boston, exceeding the six trips per year that the Hearing Officer deemed was appropriate to meet Aaron's educational needs." (¶ 9.) Thus, it appears that Defendants have complied with the stay-put provision of the IDEA, and Plaintiffs have offered no evidence to the contrary, other than the unsupported assertion in their complaint that Defendants cut off services during the pendency of the due process hearing. (Complaint ¶ 22.) The court therefore grants summary judgment to the District on this claim.

## Plaintiffs' Challenge to the Development of the
## November 1999 IEP and the Related Services Provision

Although Plaintiffs do not argue that Aaron was denied a FAPE, given that the District placed Aaron in Boston Higashi, they argue that the IHO improperly "elevated the School District administrators over all Aaron's direct service staff and gave them a controlling veto over all other team members, including the Parents." (Pls.' Memorandum in Support of Summary Judgment at 19.) They argue that the November 1999 IEP had the goal of "decreasing the child's appropriate behavior," and that the IEP was too "generic" and ignored Aaron's individual needs, specifically his need for Boston Higashi's Daily Life Therapy program.[5]

Notably, Plaintiffs do not contend that the meeting held on November 19, 1999 was insufficient under the standards set forth in 20 U.S.C. § 1414 (d)(1)(B). Although the parents have some animosity toward the District, this alone does not invalidate the procedures used to formulate Aaron's IEP. Federal regulations direct that the IEP should be developed through consensus, but "the public agency has ultimate responsibility to ensure that the IEP includes the services that the child needs in order to receive [a Free Appropriate Public Education, or 'FAPE']." 34 C.F.R. Pt. 300, App. A. Furthermore, Aaron's parents do not argue that Aaron was not provided a FAPE, as is required under the substantive provisions of IDEA. 20 U.S.C. §§ 1401(8), 1414(d).

In any event, even if this court were to agree with Aaron's parents that there were procedural flaws in the development of Aaron's November IEP, the outcome of the case would be no different. In order to constitute a violation of IDEA, a procedural flaw must cause harm to Aaron. The question is whether the development of the November 19, 1999 IEP deprived Aaron of a free appropriate public education. *Heather S.*, 125 F.3d at 1059. Here, where the parents have not even argued that Aaron was denied a FAPE, they cannot possibly recover for any procedural

---

[5] This appears to be an objection to the form of the IEP, rather than its substance. There is no evidence that Aaron did not actually participate in Daily Life Therapy, Boston Higashi's trademarked program.

deficiencies, even if they did successfully prove them.

The parents' challenge to the reduction of reimbursed travel fares no better. The related services provision of the IDEA, 20 U.S.C. § 1401(a)(17) does not mention parental transportation or support, but may fairly be understood as encompassing the training parents require to support their disabled children: The Supreme Court has noted that the provision "broadly encompasses those supportive services that 'may be required to assist a child with a disability to benefit from special education.'" *Cedar Rapids Community School Dist. v. Garret F. ex. rel. Charlene F.*, 526 U.S. 66, 73 (1999). The IHO here ruled that the amount of travel reimbursement approval by the District met "federal and state requirements . . . in providing for related service in the IEP to assist the child with a disability to benefit from special education." (*Id.* ¶¶ 143-44.) As discussed above, several considerations led to this determination; in this court's view, the most persuasive of these considerations was the IHO's observation that, although twelve reimbursed trips were authorized by the earlier IEP, the parents had never in fact taken twelve trips per year to Boston Higashi for training. (Defs.' 56.1 ¶ 74.)

The IHO determined that Aaron's parents were making significant progress with Aaron when he visited home, and found that six reimbursable visits per year to Boston was sufficient. Aaron's parents have provided no evidence to the contrary, and admitted they are much better equipped to meet Aaron's needs. Therefore, this court affirms the IHO's finding that the 1999 IEP related services provision, allowing six reimbursable trips per year, is reasonable.

Finally, Aaron's parents do not have a claim for attorneys' fees because they are not prevailing parties. *Bd. of Educ. of Oak Park v. Nathan R.*, 199 F.3d 377, 381 (7th Cir. 2000).

Defendants' motion for decision (Doc. No. 48-1) is granted. Plaintiffs' motion for summary judgment (Doc. No. 37-1) is denied, Defendants' motion to strike (Doc. No. 39-1) is denied, and Defendants' motion for summary judgment (Doc. No. 33-1) is granted. Judgment will be entered in favor of Defendants.

ENTER:

Dated: February 3, 2003

REBECCA R. PALLMEYER
United States District Judge