# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Rebecca R. Pallmeyer | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 7732 | **DATE** | 11/25/2003 |
| **CASE TITLE** | Aaron M. vs. Joseph Yomtoob, et al | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]  Enter Memorandum Opinion And Order. Defendants' motion for repayment of money paid during stay-out (55-1) is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | **2** | **Document Number** |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | **NOV 2 6 2003** | |
| | Notified counsel by telephone. | | date docketed | **65** |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 11/25/2003 | |
| | | | date mailed notice | |
| ETV | courtroom deputy's initials | | ETV | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

AARON M., by and through his parents )
and next friends GLEN M. and LINDY M., )
and on their own behalf, )
                                                 )

             Plaintiffs, )

                        )

         v. )      No. 00 C 7732

                       )

JOSEPH YOMTOOB, JESS PORRES, )    Judge Rebecca R. Pallmeyer
both sued in their official capacity and )
individually; and HAWTHORN SCHOOL )
DISTRICT NO. 73, )
                       )

            Defendants. )

## MEMORANDUM OPINION AND ORDER

Plaintiff Aaron M., a minor disabled child (born on October 19, 1988), has been diagnosed

with autism and is eligible for federal education assistance under the Individuals with Disabilities

Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.* He has been enrolled at Boston Higashi, a

private residential facility in Randolph, Massachusetts, since January 1996. Aaron's parents,

Plaintiffs Glen M. and Lindy M., are residents of Defendant Hawthorn School District No. 73

("District") which is located in Lake County, Illinois. On November 27, 1999, Aaron's parents filed

a request for a special education due process hearing to challenge the appropriateness of a new

Individualized Education Program ("IEP") developed for Aaron by the District and two of its

administrators, Defendants Joseph Yomtoob and Jess Porres. The new IEP provided that the

District would reimburse Aaron's parents for six round trips to Boston each year, down from the

twelve round trips contemplated in an earlier IEP.

While the case was pending before an Independent Hearing Officer ("IHO") and then this

court, the District continued to pay for Aaron's parents to visit Boston twelve times per year as set

forth in the IEP in effect when the parents filed their hearing request. After this court affirmed the

hearing officer's determination that six trips per year is reasonable, Defendants filed a motion

65

seeking reimbursement for the parents' travel expenses in excess of six per year. For the reasons set forth here, that motion is denied.

## BACKGROUND

The facts of this matter are more fully presented in this court's February 3, 2003 Memorandum Opinion and Order ("Order"). *See Aaron M. v. Yomtoob*, No. 00 C 7732, 2003 WL 223469, at *1-4 (N.D. Ill. Feb. 3, 2003). This opinion assumes the reader's familiarity with the earlier decision and will summarize the relevant facts here only briefly.

Aaron was enrolled in Boston Higashi in January 1996. His December 1995 IEP provided for residential placement because he was not generalizing his skills at home and outside of the school setting, which reduced the efficacy of the instruction he was provided at school. The placement in Massachusetts was intended to help Aaron learn to control his behavior and also to teach Aaron's parents the skills and strategies to work with Aaron so that he could return to his home. *Aaron M.*, 2003 WL 223469, at *1. Recognizing the importance of Boston Higashi's parent training program to Aaron's successful return home, the District agreed in the IEP to reimburse Aaron's parents for up to twelve visits to Boston per year, either for training or to pick Aaron up or drop him off. From 1996 through 1999, however, Aaron's parents never took more than six round trips to Boston each year. *Id.* at *2.

On November 19, 1999, the District conducted a meeting to review the 1995 IEP, which expired on November 3, 1999. The District's IEP team agreed that Aaron would remain at Boston Higashi for the next school year, but reduced the number of reimbursable trips Aaron's parents could take to Boston each year from twelve to six. *Id.* at *2-3. Reimbursable expenses for those trips included airfare, two nights at a hotel, $35 per day per parent for meals, two days parking at the airport, and the cost for a two-day car rental. Aaron's parents objected to the reduction in the number of trips for which they would be reimbursed and rejected the IEP. On November 27, 1999,

2

they requested a special education due process hearing to consider, in part, whether it was proper for the District to reduce the number of annual reimbursable parent trips to Boston Higashi. The IHO concluded that six trips per year was appropriate, noting that (1) the parents had never taken twelve training trips to Boston in one year since Aaron first enrolled in Boston Higashi; (2) none of the parents' Boston trips coincided with the parent training sessions offered by Boston Higashi; and (3) Boston Higashi itself did not include parent training as a goal in the IEP it proposed for Aaron in November 1999. *Id.* at *3.

On December 8, 2000, Aaron and his parents brought this action against Defendants. They appealed the result of the due process hearing, including the IHO's conclusion that the reduction in the number of reimbursable trips was reasonable. *Id.* at *5. The parties filed cross-motions for summary judgment and on February 3, 2003, this court granted Defendants' motion. The court found that the IHO reasonably determined that six reimbursed visits per year to Boston Higashi was sufficient, particularly since the parents had never in fact taken twelve trips per year to Boston even under the earlier IEP, which authorized them to do so. *Id.* at *6.

In accordance with the IDEA's stay-put provision, 20 U.S.C. § 1415(j), Defendants continued to pay for Aaron's parents to take up to twelve trips to Boston Higashi each year pending the outcome of this case. Between November 27, 1999 and February 3, 2003, the parents took a total of twelve trips in excess of the six trips per year found reasonable by the IHO and this court. Defendants now seek reimbursement for the extra travel expenses for these twelve trips, a total of $13,348.74.

### DISCUSSION

Recognizing that it can take years to resolve a placement dispute under the IDEA's administrative and judicial review procedures, § 1415(j) of the Act requires that

> [e]xcept as provided in subsection (k)(7) of this section, during the pendency of any proceedings conducted pursuant to this section, unless the State or local

3

educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of such child . . .

20 U.S.C. § 1415(j). This has become known in the education sector as the "pendent-placement" or "stay-put" provision of the Act. The stay-put provision is meant to preserve the status quo and "give the child's parents the choice of keeping the child in his existing program until their dispute with the school authorities is resolved." *Board of Educ. of Oak Park & River Forest High Sch. Dist. 200 v. Illinois State Bd. of Educ.*, 79 F.3d 654, 659-60 (7th Cir. 1996). *See also Monticello School Dist. No. 25 v. George L. on Behalf of Brock L.*, 102 F.3d 895, 905 (7th Cir. 1996) (quoting *School Committee of Town of Burlington v. Department of Educ.*, 471 U.S. 359 (1985)) (stay-put provision prevents "school officials from removing a child from the regular public school class room over the parents' objection pending completion of the review proceedings"); *Peter G. v. Chicago Public Sch. Dist. No. 299 Bd. of Educ.*, No. 02 C 0687, 2002 WL 818008, at *5 (N.D. Ill. Apr. 30, 2002) (stay-put provision "ensure[s] the educational needs of a child are met during the pendency of any proceedings conducted pursuant to the IDEA"); *J.O. ex rel. C.O. v. Orange Township Bd. of Educ.*, 287 F.3d 267, 272 (3d Cir. 2002) ("[s]tay-put orders are designed to maintain the status quo during the course of proceedings. They 'function[ ], in essence as an automatic preliminary injunction'").

The parties agree that the District was required to continue paying for Aaron's parents to take up to twelve trips to Boston per year while the case was pending before the IHO and this court. They disagree, however, as to whether the District is entitled to be reimbursed for trips it funded in excess of six per year now that the court has determined that the six trip limit is reasonable. The IDEA provides no specific instruction on this issue. Section 1415(i)(2) of the Act provides, without elaboration, that a district court has authority to "grant such relief as [it] determines is appropriate." 20 U.S.C. §1415(i)(2)(B)(iii). In *Burlington*, the Supreme Court construed this language as authorizing a district court to "order school authorities to reimburse parents for their expenditures on private special education for a child if the court ultimately

4

determines that such placement, rather than a proposed IEP, is proper under the Act." 471 U.S. at 369. According to the Court, "[r]eimbursement merely requires the [school district] to belatedly pay expenses that it should have paid all along and would have borne in the first instance had it developed a proper IEP." *Id.* at 37-71. At the same time,

> parents who unilaterally change their child's placement during the pendency of review proceedings . . . do so at their own financial risk. If the courts ultimately determine that the IEP proposed by the school officials was appropriate, the parents would be barred from obtaining reimbursement for any interim period in which their child's placement violated [the stay-put provision].

*Id.* at 373-74. *See also Florence County Sch. Dist. Four v. Carter By and Through Carter*, 510 U.S. 7, 15 (1993) ("parents who . . . unilaterally change their child's placement during the pendency of review proceedings . . . do so at their own financial risk").

Defendants argue that the Supreme Court's rationale in *Burlington* supports its claim for reimbursement because "Plaintiffs are being asked to belatedly pay for those trips that they have taken to and from Boston for which they should have been paying all along." (Def. Reply, at 5-6.) This argument proves too much, however, because *Burlington* focused solely on the rights of prevailing parents and did not consider whether school districts have similar rights of reimbursement. *See Burlington*, 471 U.S. at 373 (noting that the stay-put provision "is located in a section detailing procedural safeguards which are largely for the benefit of the parents and the child"). In addition, this is not a case where the parents unilaterally placed their son in a private facility and started traveling to visit him; Aaron was already attending Boston Higashi when the parents challenged his new IEP.

The parties do not cite, nor has this court found, any cases that have directed parents who were unsuccessful in their IEP challenge to reimburse a school district for expenses associated with a child's interim placement which the school district incurred while the challenge was pending. Defendants point to the following footnote in *Verhoeven v. Brunswick School Committee*, 207 F.3d 1 (1st Cir. 1999) as evidence that such reimbursement is proper: "The stay put provision of

subsection 1415(j) does not . . . immunize parents who challenge an IEP from an action by the school district for reimbursement." *Id.* at 6 n.1. Plaintiffs correctly note that *Verhoeven* did not involve a school district's claim for reimbursement but, rather, a child's appropriate placement during the pendency of proceedings challenging his IEP. (Pl. Mem., at 5-6.) *See Verhoeven*, 207 F.3d at 4, 8 (parties opted out of stay-put provision by "otherwise agree[ing]" to let hearing officer determine child's interim placement; moreover, parties agreed that private school placement would be temporary so allowing child to "stay-put" there "would actually change the agreed-upon status quo, not preserve it").

Another case cited by Defendants, *Doe v. Brookline Sch. Committee*, 722 F.2d 910 (1st Cir. 1983), provides stronger support for their argument, as it indicates that the First Circuit, at least, recognizes that reimbursement of the school district for unwarranted expenses may be appropriate under certain circumstances. In *Doe*, a school district that placed a child in a private school for several years determined that he should be enrolled in a public school program the following year. *Id.* at 912-13. The parents objected to the public school placement and a district court ordered the school district to continue paying for the child's private school education until the merits of the IEP were decided. *Id.* at 913. On appeal from this decision, the First Circuit held that "the party seeking a modification of the status quo should bear the burden of proof" and must proceed by a motion for preliminary injunction. *Id.* at 919. The court also indicated that a school district might be entitled to reimbursement of private tuition expenses incurred during the pendency of review if its proposed public placement was ultimately found to be appropriate:

> We believe that the best approach to this issue is to require each party to bear the costs of its own errors of judgment in determining what a "free appropriate education" for a child requires in the pertinent circumstances. When parents become convinced that their child is not receiving an appropriate education, the potential for reimbursement from the school system would encourage them to be assiduous in protecting their child's rights, yet the potential of having to repay the school system for a change to a private school would militate against impulsive or unfounded actions: a balance is struck.

6

> We conclude that permitting reimbursement promotes the purpose and policy of the Act. If the parents are incorrect in their claim that the IEP provides an inappropriate education for their child, they, like any other parents, should bear the financial burden of giving their child a private education. If the school committee's proposed public placement is held inappropriate, then through reimbursement all parties are restored to the position the Act sought to achieve.

*Id.* at 920-21. (Def. Mem., at 4-5.) The court remanded the case for a determination whether the school district had forfeited its right to reimbursement by unilaterally ceasing its private school tuition payments and, if not, whether the parents had to reimburse the school district if the IEP was upheld. *Id.* at 921. *See also Henry v. School Administrative Unit No. 29*, 70 F. Supp. 2d 52, 62 (D.N.H. 1999) ("[c]onsistent with First Circuit precedent . . . the Henrys will be required to reimburse the School District for all costs that the District incurs in maintaining the placement if it ultimately prevails on the merits").

Plaintiffs argue that *Doe v. Brookline* "contradicts the very reason the stay put provision was included in federal law," namely, "to ensure parental participation in decisions concerning the education of their disabled children and to provide administrative and judicial review of any decisions with which those parents disagree." (Pl. Mem., at 10) (quoting *Honig v. Doe*, 484 U.S. 305, 308 (1988)). As Plaintiffs see it, "[t]he stay-put provision was included by Congress to help level the playing field between schools and parents so that a student could be placed in an appropriate setting by well-intentioned parents and then the administrative and judicial proceedings could proceed." (Pl. Mem., at 8.) Plaintiffs do not cite any authority for this theory, and case law indicates that the stay-put provision is actually designed to preserve the status quo, not to permit "well-intentioned parents" to unilaterally select their preferred interim placement for their child. *See Ms. S. ex rel. G. v. Vashon Island Sch. Dist.*, 337 F.3d 1115, 1133 (9th Cir. 2003) ("the 'stay-put' provision is meant to preserve the status quo"); *J.O. ex rel. C.O.*, 282 F.3d at 272; *Verhoeven*, 207

F.3d at 3 (§1415(j) "is designed to preserve the status quo pending resolution of challenge proceedings under the IDEA").

Nor is the court persuaded that *Doe v. Brookline* may be disregarded on the ground that it is inconsistent with the notion that the stay-put provision is an "automatic statutory injunction." (Pl. Mem., at 10.) *See Peter G.*, 2002 WL 818008, at *3 (stay-put order functioned as an automatic statutory injunction where child had been identified as disabled under the IDEA and had an IEP prepared on his behalf). As noted, there is no dispute that the school district was required to, and did in fact continue paying for up to twelve trips per year pending a final decision in this case. In addition, the mere fact that an injunction may be automatic does not establish that the court cannot order the parents to repay a school district if the IEP they are challenging turns out to be appropriate. *See Honig*, 484 U.S. at 327 ("[t]he stay-put provision in no way purports to limit or pre-empt the authority conferred on courts by [§ 1415(i)(2)(B)(iii)]").

Still, even assuming that the First Circuit would support the District's claim for reimbursement from Aaron's parents, it is not clear that the Seventh Circuit would reach a similar conclusion. Defendants argue that it would, citing *Dale M. ex rel. Alice M. v. Board of Educ. of Bradley-Bourbonnais High Sch. Dist. No. 307*, 282 F.3d 984 (7th Cir. 2002). In *Dale M.*, the court considered the appropriate placement for Dale, a disruptive child with a conduct disorder and a history of depression and substance abuse who spent time in jail for residential burglary. *Id.* at 814. When Dale was released from custody, the school district proposed returning him to a therapeutic day school, but his mother elected instead to place him in the Elan School, a residential school in Maine. The school district refused to pay for this placement, which did not offer psychiatric or medical treatment for substance abuse or depression and was "just a boarding school for difficult children." *Id.* at 814-15. A hearing officer determined that the school district's proposed IEP was appropriate and declined the mother's request for reimbursement for Dale's

8

placement at Elan, but the district court disagreed and ordered the school district to pay Dale's private tuition, which it did pending an appeal. *Id.* at 815.

The Seventh Circuit first rejected the plaintiffs' argument that by paying Dale's tuition, the school district rendered its appeal moot. "A judgment creditor who pays the judgment pending appeal instead of posting a supersedeas bond . . . is entitled to the return of its money if the decision is reversed, and so the payment does not moot the appeal unless the appellant has relinquished his right to seek repayment if he wins." *Id.* at 815. The court went on to find that the school district was not required to pay for Dale to attend Elan because his problems were not primarily educational. His mother was essentially arguing that "since confinement, among its other benefits to Dale, will make it easier for him to obtain an education, the school district is responsible for the cost of confinement." *Id.* at 817. According to the Seventh Circuit, that argument went too far. *Id.* On remand, the school district moved for motion for repayment of the money paid pending appeal, and the district court granted that motion after plaintiffs failed to respond. *See Dale M. ex rel. Alice M. v. Board of Educ. of Bradley-Bourbonnais High Sch. Dist. No. 307*, No. 96-2254 (C.D. Ill. Aug. 9, 2001).

Defendants argue that *Dale M.* supports their claim for reimbursement because the court ordered the parents to repay the school district for the Elan School tuition expenses it paid pending an appeal. (Def. Reply, at 8.) Plaintiffs insist that *Dale M.* is "an extraordinary case" that is "easily distinguishable" from Aaron's situation because Dale was "more or less, a criminal." In Plaintiffs' view, the fact that Judge Ripple dissented to the majority's determination that support services are not allowed unless aimed at a problem that is "primarily educational" demonstrates that the case is "even less appropriate as a guide to deciding the instant case." (Pl. Mem., at 8-10.) *See Dale M.*, 237 F.3d at 818. Plaintiffs also suggest that Dale's parents were only ordered to reimburse the school district because they failed to respond to the school district's motion for repayment. (Pl. Mem., at 9.)

9

In this court's view, neither party has accurately characterized the holding in *Dale M.* Contrary to Defendants' suggestion, the court did not find that school districts become judgment creditors by making payments under the IDEA's stay-put provision. (Def. Mem., at 3-4.) Nor is it relevant that Aaron is a law-abiding child who concededly belongs at Boston Higashi. *Dale M.* merely confirms the Supreme Court's holding in *Burlington* that parents who unilaterally place their child in a private facility that is ultimately determined to be unnecessary for the child's education must bear the financial risk of such a placement. *But see Clovis Unified Sch. Dist. v. California Office of Administrative Hearings*, 903 F.2d 635, 641 (9th Cir. 1990) (though parents unilaterally placed child in an acute care facility, once a district court determined that the facility was the appropriate pendent placement, "school district and the state [we]re responsible for the costs of Michelle's placement during the court review proceedings regardless of which party prevail[ed] in th[e] appeal").

Defendants identify several other courts that have addressed the possibility of a school district's recovery of stay-put expenses, but none has affirmatively decided the issue. *See, e.g., St. Tammany Parish Sch. Bd. v. State of Louisiana*, 142 F.3d 776, 788-89 (5th Cir. 1998) (deferring until after a decision on the merits of the child's placement the question whether the Louisiana Department of Education could recover "some, if not all, of the stay-put costs"); *Susquenita Sch. Dist. v. Raelee S. By and Through Heidi S.*, 96 F.3d 78, 87 n.10 (3d Cir. 1996) (noting district court's conclusion that school district could not seek reimbursement of stay-put costs even if it prevailed in the case, but declining to resolve the issue as premature); *T.H. v. Board of Educ. of Palatine Community Consol. Sch. Dist. 15*, No. 98 C 4633, 1998 WL 850819, at *6 n.6 (N.D. Ill. Dec. 3, 1998) (raising but declining to express "any opinion . . . whether repayment by the parents would be required if defendants prevail"). The *T.H.* court, moreover, noted that "the ultimate assignment of interim expenses may not be a simple matter of who prevails on the merits" and expressed concern that "an absolute reimbursement requirement would mean that families without

access to financial resources would be hesitant to take advantage of the protection provided by § 1415(j), even if they were reasonably certain to prevail." 1998 WL 850819, at *6 n.6. Similarly, the *Tammany* court expressed concern that, contrary to the goals of IDEA, "parents may be forced to withdraw their child from a placement which they and the state agree is appropriate because the parents might not have the financial resources to repay the educational costs which accumulate during the litigation.") 142 F.3d at 789.

The stay-put provision primarily serves as a procedural safeguard for parents and their children. Accordingly, this court concludes that parents who maintain their child's stay-put placement should not be required to reimburse a school district for stay-put expenses even if the proposed IEP is found to be appropriate. The court recognizes that absent some potential responsibility for repaying a school district, parents may have incentive to challenge any IEP that reduces their child's benefits, no matter how appropriate, simply to maintain additional benefits at the school's expense for a few more months or years while the challenge is pending. This potential harm must, however, be balanced against the likelihood that requiring parents to reimburse a school district that ultimately prevails in a challenge to its proposed IEP would make parents without financial resources hesitant to take advantage of the stay-put protections. *See Edie F. ex rel. Casey F. v. River Falls Sch. Dist.*, 243 F.3d 329, 335 (7th Cir. 2001) (IDEA provides "procedural protections to ensure that parents have a voice in the education of their special-needs children"). Such a result would undermine the IDEA's fundamental policy goals of providing a "free appropriate public education" for disabled children and ensuring that their rights and the rights of their parents are protected. 20 U.S.C. § 1400(d); *Honig*, 484 U.S. at 309.

In this case, the IEP in place for Aaron prior to November 27, 1999 provided for twelve reimbursed parent trips to Boston each year. As this court interprets § 1451(j), that section shields Aaron's parents, who relied on the previous IEP provisions, from the obligation of reimbursing the District for trips they took in excess of the number permitted under the new IEP. The court is

sensitive to the appearance that Aaron's parents have taken advantage of the appeal procedure; they never took more than six trips to Boston per year until the new IEP limited them to that number. Nevertheless, the court concludes that their arguable abuse of the stay-put system is not a basis for imposing a reimbursement requirement that is contrary to the policy behind the IDEA.

## CONCLUSION

For the reasons stated above, Defendants' Motion for Repayment of Money Paid During Stay-Put (55-1) is denied.

ENTER:

Dated:  November 25, 2003

REBECCA R. PALLMEYER
United States District Judge